# MARION McD. PRICHARD ET AL. *vs.* NATHANIEL B. ABBOTT.

*Unauthorized Transfer of Shares of Stock Vacated.*

The evidence in this case examined and held to show that the defendant held a power of attorney authorizing him to sell and transfer certain shares of stock belonging to plaintiff and pay over the proceeds to plaintiff; that the defendant transferred certain of the shares to his wife, without consideration, and that defendant's allegation that the plaintiff was indebted to him was without foundation. Consequently, a decree directing that the shares of stock be retransferred to the plaintiff, and revoking the power of attorney should be made.

*Decided December 20th, 1906.*

Appeal from the Circuit Court No. 2, of Baltimore City (WICKES, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, SCHMUCKER, JONES and BURKE, JJ.

*Robert W. Mobray* (with whom was *Michael P. Kehoe* on the brief ), for the appellants.

*John E. Semmes*, for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is a proceeding by a bill in equity, filed in the Circuit Court No. 2, of Baltimore City, by the appellee against the appellants, to compel a transfer and assignment to the appellee of thirty-five shares of the capital stock of the Imperial Bottle Cap and Machine Company, a corporation of the State of Delaware, but doing business in this State, which stock had previously been assigned by the appellant, Marion M. Prichard to Mae M. Prichard, his wife.

The bill prayed for an injunction to restrain the further sale

or transfer of the stock, and also to restrain the appellant, Marion, from selling or in any manner disposing of the appellee's stock under a certain power of attorney from the appellee to the appellant, and that the power of attorney be revoked.

The case was heard upon bill, answer and testimony and from a decree of Court granting the relief as to the re-assignment to the plaintiff of the thirty-five shares of stock, transferred from the husband to the wife, this appeal has been taken.

The true state of the case, and the one which appears to be supported by the proof, seems to be this.    On the 15th day of January, 1902, the appellee, Abbott, executed and delivered to the appellant, Prichard, a power of attorney to make sale of one hundred shares of stock of the Imperial Bottle Cap and Machine Company owned by the former, with power to assign and transfer it to the purchaser thereof, and to accept the money paid therefor, with the condition that the sale, price and assignment should not be made known to any parties, either by Prichard or the purchaser.

Prichard was the secretary of the company, and was employed by one Raleigh, who was interested in securing subscriptions to the stock of the company, and was to be paid a certain compensation for the services to be so rendered.    According to the testimony disclosed by the record the contract of employment was made by Raleigh and Prichard, and the latter was to be paid by the former for the services in procuring subscriptions to the stock.

The contract between the appellant and the appellee, as evidenced by the power of attorney dated the 15th day of January, 1902, relates to the contemplated sale of one hundred shares of stock belonging to the appellee.    Thirty-five shares of this stock were transferred and assigned by the appellant to his wife and is the stock here in controversy.

The bill charges that on or about the 14th of February, 1902, the appellant sold twenty-five shares of the stock and collected therefor the sum of eight hundred dollars, but represented to the appellee that he had lost the money on the street.    Subsequently, relying upon the statement thus made

and upon the request of the appellant, he was authorized to sell more of the stock, under the power of attorney, and to pay the proceeds of sale to the appellee together with the amount claimed to have been lost.

The bill then charges that instead of selling the stock under the power of attorney for the benefit of the appellee as authorized, he wrongfully transferred to his wife thirty-five shares thereof, and as secretary of the company caused a certificate therefor to be issued and delivered to his wife without any consideration whatever, and she now holds the certificate without having paid anything for it.

The defense relied upon by the appellants as set out in the answer, is based upon an alleged indebtedness of sixty shares of stock for services rendered in procuring subscribers to the capital stock of the company under an agreement between the appellant and one Raleigh, and the payment of which it is alleged the appellee assumed to pay.

We do not see any ground upon which the defense here asserted can rest or be sustained. The testimony clearly shows that the contract of employment and the payment for the services to be rendered was solely between the appellant and Mr. Raleigh. The appellant testified that the payment was to come from Raleigh, when he received his stock and that he looked to him for it ; that his only contract was with him and the stock was to be given him for the services thus rendered.

The appellee positively denies the indebtedness as alleged by the answer, and the assumption of the payment by him of the amount alleged to be due by Raleigh, on account of the stock subscription. And in this he is sustained by the proof.

The power of attorney only authorized the appellant to sell certain stock belonging to the appellee, and to pay the owner the proceeds, whereas the appellant by an admitted subterfuge obtained the proceeds of twenty-five shares of the stock, and also transferred thirty-five shares to his wife without any consideration whatever. In explanation of the transaction, we have the testimony of the appellant himself in answer to the following questions.

"Q. And you told him you had lost some money, and he then gave you a certain number of shares, fifteen shares, was it ? (It was, in fact, twenty-five.)

A. Yes, sir ; he told me to issue it from the power of attorney that I held.

Q. And you had not in fact lost the money ?

A. No, sir ; I had not.

Q. Why did you tell him that you had lost it ?

A. I used it, as a subterfuge to get an acknowledgment that this stock was to be paid to me, or was to be issued to me, as I had been promised so often since the time when I had gotten the subscriptions to stock, and also the cash in payment for same ; therefore, the only plan that I could see to obtain that stock was to use the same motive in getting it as Mr. Abbott had used. "

It thus appears that the transfer of the stock in question, was not only unauthorized and in violation of the power of attorney, but was an improper and wrongful conversion of the appellee's stock, without consideration and without authority.

There is no evidence in the case to indicate that the appellee ever assumed the payment of the alleged indebtedness from Raleigh to Prichard for services rendered in procuring subscriptions to stock of the company to the extent of making the one hundred shares of stock, his own stock, mentioned in the power of attorney, liable therefor.

On the contrary, the evidence shows that the appellant was employed by Raleigh, that he had no contract with the appellee and that he looked to Raleigh for payment. At least there is no evidence to establish a contract that he should be paid for his services from the appellee's own stock.

Apart from the positive evidence showing a wrongful transfer of the thirty-five shares of stock in this case, it is well settled that a voluntary and gratuitous transfer of property from the husband to the wife requires the strictest scrutiny and investigation when attacked, and must be free from all semblance of bad faith before it will be supported by a Court of equity.

The circumstances attending the transfer of the stock in this case are not such as to invoke the favorable consideration of a Court of equity. The stock in controversy was the property of the appellee, the transfer was absolutely wrongful, and the Court below committed no error in directing its reassignment to the plaintiff, in accordance with the prayer of the bill. The decree will be affirmed.

*Decree affirmed, with costs.*